### SAM JONES v. THE STATE.

No. 3337.     Decided June 13, 1906.

**1.—Assault to Murder—Discretion of Court.**

Upon a trial of assault with intent to murder, it was in the sound discretion of the court to admit testimony at any time before the conclusion of the argument; and this matter cannot be reviewed unless it be shown that such discretion was abused to the injury of the accused.

**2.—Same—Argument of Counsel.**

On trial for assault with intent to murder, where the criticism of the argument of State's counsel could not be applied to much of his argument in denouncing in severe terms a witness for the defendant for testifying falsely in other cases, and there was not sufficient transgression of the rules of legitimate argument, there was no reversible error.

**3.—Same—Charge of Court—Self-Defense—Defendants Stand Point.**

Where upon trial of assault with intent to murder, the theory of the defense was that the prosecutor fired at defendant before the latter shot at prosecutor, and the

court instructed the jury that they must view the matter from the defendant's stand-point, there was no merit in the objection that the court had not sufficiently emphasized this matter in his charge on self-defense.

**4.—Same—Specific Intent to Kill—Robbery.**

Where upon trial for assault with intent to murder, the evidence showed that during the difficulty between the parties the defendant required prosecutor with force of arms to pay him what money he had, under a claim that he owed defendant for rent, defendant could not plead justification or mitigation of his assault to murder on the ground that the assault was committed for the purpose of robbery, if defendant's intent was to collect the money from prosecutor or kill him; and there was no error to fail to charge that if defendant intended to commit robbery or in case of reasonable doubt to acquit him.

Appeal from the District Court of Jefferson. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault with intent to murder, Sandy Dukes. The conviction resulted in his incarceration in the penitentiary for five years.

Exception was reserved to the action of the court permitting the witness Watts to be introduced during the argument of counsel before the jury. The bill of exceptions as qualified by the judge shows that, before the State concluded its evidence, the county attorney stated to the court that Judge Watts was a material witness and requested cessation of proceedings until the witness could reach the courthouse; that the witness was in town. However, the court refused to delay the trial, and told the county attorney if the witness came in before defendant's counsel closed his argument, he would be permitted to testify. Judge Watts did reach the courthouse after the county attorney had been addressing the jury not more than a minute or two in his opening argument, and was permitted to testify. The court then informed appellant's counsel he would permit him to offer any evidence he might desire before the argument further proceeded. Counsel stated that he had no further evidence to offer, and the argument continued. The statute authorizes the admission of testimony at any time before the conclusion of the arbument, and this is a matter largely addressed to the discretion of the trial court, and in order to authorize a reversal the discretion of the court must be shown to have been abused to the injury of the accused. This bill of exceptions does not show any undue advantage or that the judicial discretion of the court was in any way abused.

Another bill was reserved to some remarks of the county attorney. As explained by the court, and shown by the statement of facts, we are of the opinion that it is not of sufficient importance to require a reversal.

The county attorney took occasion to say that witness Frank Johnson, who testified for the defendant, had several times gone before the grand jury and testified, and that alone upon his testimony bills of indictment had been found, and when the parties were brought to trial, witness invariably appeared as a witness in behalf of defendant, thereby bringing about an acquittal. He denounced said witness as a perjurer, etc., and stated he should be in the penitentiary. He further stated that said witness had testified falsely in the present case, and that he, as county attorney, had ordered the sheriff to hold him until he could charge him with perjury committed on this trial, and that he was then in custody for such false statement. The court signs this with the qualification, that after the county attorney had made the remarks mentioned, defendant's counsel then got up and stated to the court he desired a bill. Whereupon the court turned to the jury and instructed them to disregard in toto the remarks of the county attorney; and further instructed them that such remarks were entirely out of place, and urged the jury in emphatic language to disregard the remarks for any purpose. It is further stated that the witness concerning whom these remarks were made did admit on cross-examination that he had on one prior occasion done just what the county attorney accused him of, but contended he was forced so to do. And further, in reference to that part of the foregoing bill, that the county attorney told the jury he had just had said witness arrested for his perjured testimony in this case, the court explains, that defendant's counsel, after said witness had testified and was under such arrest, had said witness recalled and proved by said witness himself that the county attorney had caused him to be arrested, and that he (witness) had sworn falsely in the present case. The court further states that had defendant's counsel sooner objected to any of the aforesaid remarks of the county attorney, the court would have promptly stopped the county attorney before he had gone as far as he did. It may be conceded that the remarks of the county attorney to some extent should not have been indulged, yet some of the argument is fully justified by the facts. The record shows that this witness, as stated by the court, had at least on one prior occasion acted as charged by the county attorney, and in the present case had made an entirely different statement of the transaction about which he testified to the county attorney in his office and in the presence of other witnesses. Much of the criticism of the county attorney mentioned was authorized by the record. We are of opinion that, under the peculiar circumstances of the case, the testimony in the record and the action of this witness as shown both by the statement of facts and the qualification of the bill by the judge, there is not sufficient transgression of the rules of legitimate argument to require a reversal of this case.

The charge of the court in regard to self-defense is criticised, because the court should have told the jury that defendant had the right to act as viewed from his (defendant's) standpoint at the time of the trouble; and that the error in this portion of the charge was not cured

by the fact that the court in another part of the charge did so instruct the jury; and further, that the charge in regard to the right of self-defense should have pertinently and directly and in specific terms informed the jury that, if appellant did assault Dukes, and that he did so after Dukes had shot at him (defendant), he then had a right to protect himself against such attack or threatened attack. The theory of the defense was that Dukes fired at appellant before he (appellant) shot at him. The court instructed the jury that in viewing the theory of self-defense they should regard it from the defendant's standpoint, and as it presented itself to him, in sufficiently cogent terms. There is no merit in this criticism of the charge. The court charged the jury in regard to the other phases of the objection, that appellant had a right to defend himself against all appearances of danger at the hands of Dukes, and if he believed himself in danger at the time he had the right to shoot. We believe that this was a sufficient presentation of the law of self-defense, without the court going further and stating to the jury in express terms, that if they believed Dukes shot at appellant, he then had the right to shoot in self-defense. In other words, that the charge sufficiently presents the law of self-defense, without the court specifically calling the jury's attention to the fact that Dukes may have shot at appellant. They could not have been misled under the facts of this case. The issue was sharply drawn. It was a case of self-defense on one side or of direct assault on the part of appellant by shooting at the injured party.

Appellant contends that the court should have charged the jury that if defendant assaulted Dukes, but did so not with the specific purpose of killing, but for the purpose of robbery or of collecting from Dukes money claimed by defendant to be due from Dukes, or if there is a doubt upon either proposition that he should be acquitted. We cannot agree to either of these proposition under the facts. The court charged assault to murder, aggravated assault and self-defense. The State's case is that Dukes and another party had rented a house from appellant as agent, for $6 a month. Dukes had paid $2 of the money, and contended that he owed but $1, and was about to leave town: his theory being that his associate in the rental contract owed the other $3. On the morning of the difficulty, State's witness Dukes had purposed going from where he was to what he calls the Old Town, with Mumphry in a wagon. As he started to get in the wagon, appellant caught hold of him, said he had a good notion to chop off his head. Witness said, "No, I don't think you will." Appellant said, "I am going to have my money or kill a negro to-day." Said he had a notion to chop off witness' head, was going to have his money to-day or kill a negro. He further stated, some of the negroes owed him money, and went off without paying. Dukes went on up to the Old Town and sat around. After he started from this town in the direction of Port Arthur, appellant came up behind him, about a mile from the place, halloed at him to hold up. Witness did not hold up, and appellant shot at witness.

This caused witness to move up rather rapidly, and he finally succeeded in eluding appellant. Appellant then borrowed a horse, and followed Dukes and overtook him. He approached witness holding pistol in his left hand while on horseback, finally dismounted, and shot witness, who then paid him $5 in money. After he had shot witness, witness fell and appellant came up and told him to give him that money. After the witness was shot he succeeded in "climbing up," as he expressed it, by one of the by-standers, Moody, and remarked to appellant, "Sam, you shot me, and you shot me cowardly." He then stepped back and held the gun on the witness and made him give up the money which he took and started away. The injured party then fell the second time. This is practically the State's case. Appellant testified that he did not fire at witness on the first occasion referred to, but that witness fired at him. He then got a horse, followed him up, and witness Dukes fired at him again, and he returned the fire. There is no practical difference between the testimony of the witnesses in regard to the money transaction, as to the real facts, to require particular mention. It seems that appellant required Dukes to pay what money he had; in fact it seems that he made him pay a dollar more than the rental contract called for. Dukes insisted that he only owed $3, and had paid $2 of it. However, the question here contended for is, whether or not the court should have charged the jury that, if appellant shot Dukes for the purpose of collecting his money, or for the purpose of robbery, that he would not be guilty of an assault with intent to murder and should be acquitted. It is a correct statement of the law that a party must be convicted of the offense of which he stands indicted; and that the evidence must meet the allegations contained in the indictment. But it is not a correct proposition of law that if the evidence adduced will sustain the allegations of the indictment, that because they might sustain another violation of the law, therefore the jury would have the right to acquit of that charge, because the facts might justify them in saying that he had also violated another statute. Mr. Bishop in his new Criminal Law, section 339, thus lays down the rule: "If moved by more intents than one a man does what the law forbids, some of the intents being elements in the crime and others not, the latter do not vitiate the former, which in their consequences are the same as though they stood alone." In support of this he cites a number of authorities collated under note 2. In the second subdivision of section 342, the same author says: "(2.) Wounding to do bodily harm. If one to rob another attacks him, and the more easily to accomplish the robbery wounds him with intent to do him serious bodily harm, the latter intent, though secondary, satisfies the statute on the latter subject. It is the same where the offender's chief aim is his own security. If both intents existed, it was immaterial which was the principal and which the secondary one." For collated authorities, see notes 1 and 2 of this section. Mr. Wharton in his work on criminal law, volume 1, section 192, says: "And the law is that

if among all the motives leading to a particular act, one is illegal, this is sufficient to add to the act the essential evil intent, no matter how strong may be the other concurrent intents.  *  *  *   No matter what other intents existed, if the intent to do the particular unlawful act is either proved or implied, the offense if committed is complete.   If the law were otherwise there would be few convictions of crime, for there are few crimes in which extraneous motives are not mixed up with the particular evil intent." See also notes to this section.   So, it would make no difference in this case that appellant may have had the ulterior purpose of robbery, if it was his purpose to take the chance in the robbery of killing Dukes.   One of the tests under our law of assault to murder, made so by the statute, is, had a killing resulted, would the offense have been murder?   Now, under the facts if appellant shot Dukes with the purpose of robbing him or of making him turn over this money, this killing would have been unquestionably murder, and if for the purpose of robbery it would have been murder in the first degree, for the statute defines all murder committed in the perpetration of robbery as murder in the first degree.   Appellant could not plead justification or even mitigation of his assault to murder because the assault was committed for the purpose of robbery.   The evidence shows clearly, if there was an intent to rob, there was also an intent to do what he did, collect the money from the negro or kill him.   He is not authorized under our law to use a pistol and shoot, speculating on the chance as to whether he would kill or not.   Without going further into this subject, we are of opinion that the court did not commit error in refusing or failing to charge as indicated by appellant in his motion for new trial.

There being no error in this record of sufficient importance to require a reversal, the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.